form, but for five days thereafter took no steps to perfect his appeal and gave no security. Upon these facts, and affidavits showing that the detention of the vessel would involve serious loss, the libellants moved for a release of the vessel on bail.

BENEDICT, District Judge. No reason is assigned for the omission to make this application at an earlier stage in the cause. One reason given for the application at this time, is that she is under a charter and loaded and ready for sea. This charter and loading of the vessel has been before alluded to in disposing of the cause upon the merits, and it is sufficient to say here, that the embarrassment growing out of the charter and loading of this vessel was caused by the libellants themselves, when they assumed to charter and load a vessel while in custody of the law, and can not be considered as one of the ordinary incidents attending a possessory action. Under the circumstances, the position of the vessel, arising from her charter, does not appeal very strongly to the consideration of the court. Furthermore an order to release a vessel on bail, is an interlocutory order made pending the determination of the court upon the issues raised, to avoid the expense and loss incident to delay in the determination of those issues. When therefore the court has made its decree, the reason for making such an order no longer exists, and it is not seen what form of security could well be taken from the libellants here, in an action like the present, after an absolute decree made in their favor, which it is the duty of the court to see duly executed. The delay sought to be protected against, is not delay in this court, but in the appellate court.

I do not say that a state of facts might not be presented, which would make it incumbent upon this court, to direct the release of a vessel, held in a possessory action, even after final decree in the cause, and before an appeal; but in the present case, the delay sought to be protected against, is not delay in this court, but anticipated delay in the appellate court; for notice of appeal has been filed, and the appeal can be perfected without delay, and the application can at once be made to the appellate court. The order which I propose to make, will enable relief to be obtained more speedily by an application to that court than by the present motion here, and, therefore, I do not consider the interposition of this court, in the manner proposed, to be necessary. An order can be made to prevent further delay in this court, and insure the transmission of the cause to the appellate court without further delay, by shortening the time usually allowed for perfecting the appeal. It is accordingly directed that the decree of this court be executed, unless the defendant perfect his appeal, and procure the cause to be transmitted to the circuit court, within two days from the making of this order.

## Case No. 9,902.
### MUIR v. GEIGER.
[1 Cranch, C. C. 323.] [1]

Circuit Court, District of Columbia. July Term, 1806.

PAYMENT—RECEIPT OF BOND OF THIRD PERSON.

A receipt of a bond of a third person "in part pay" of a precedent debt is conclusive evidence of payment to that extent, although the obligor was insolvent at the time of the receipt given.

Indebitatus assumpsit, for a desk and bookcase sold and delivered. The defendant produced a receipt from the plaintiff, for a bond of one Allison, for £16. 14s. 10½d., "in part pay on a desk and bookcase."

The COURT (DUCKETT, Circuit Judge, absent,) said it was conclusive evidence that the bond was received in part payment, although the bond might have been unproductive, and Allison insolvent at the time.

## Case No. 9,903.
### MUIR v. JENKINS.
[2 Cranch, C. C. 18.] [1]

Circuit Court, District of Columbia. Dec. Term, 1810.

NOTES—NEGOTIABILITY—ACTION BY HOLDER.

The indorsee of a promissory note, not payable to order, but expressed to be "negotiable at the Bank of Discount and Deposit," may maintain an action upon it in his own name, against the maker.

[Cited in Bank of Sherman v. Apperson, 4 Fed. 29.]

Jenkins made a note for $250, payable to Stebbins, without the words "or order," but made "negotiable at the Bank of Discount and Deposit." Stebbins indorsed it to the plaintiff. There was a verdict for the plaintiff, and a motion in arrest of judgment, by Caldwell & Porter, the defendant's counsel.

Mr. Jones, for plaintiff, contended that a promissory note, without the words "or order," is a note within the statute of Anne, so as to enable the payee to maintain an action thereon under the statute. That if it is a note within the statute for one purpose, it is so for all other purposes; and that therefore an indorsee of a note, not payable to order, may maintain an action in his own name under the statute. Nicholson v. Sedgwick, 1 Ld. Raym. 180; Burchell v. Slocock, 2 Ld. Raym. 1545; Smith v. Kendall, 6 Term R. 123; Chit. Bills, 48, 108; Gibson v. Minet, 1 H. Bl. 569, 3 Term. R. 481; Tatlock v. Harris, 3 Term R. 174.

Caldwell & Porter, for defendant, cited Carlos v. Fancourt, 5 Term R. 482; Hodges v. Steward, 1 Salk. 125; Hill v. Lewis, Id. 133; Nicholson v. Sedgwick, 1 Ld. Raym. 180; Chit. Bills, 48; Imp. Mod. Pleader, 390; and contended that the words "negotiable at the Bank of Discount and Deposit at Washington," only confine the negotiability of the

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

note to that place, or make it payable out of a particular fund; that promissory notes are put upon the same footing as inland bills; and that an inland bill, not payable to order, is not negotiable. They cited also, Smith v. Kendall, 6 Term R. 123; Banbury v. Lisset, 2 Strange, 1211; Chamberlyn v. Delarive, 2 Wils. 353; Dawkes v. De Lorane, 3 Wils. 207; Chit. Bills, 174; Evans, Bills, 139; Kyd, 34, 35, 63, 96, 97; Esp. 26.

Mr. Morsell, for plaintiff, in reply, cited Roberts v. Peake, 1 Burrows, 323, where the note was not payable to order, and was only payable upon an uncertain contingency; and the court decided that it was not a negotiable note, because the contingency was uncertain, without noticing the objection that it was not payable to order.

The COURT (CRANCH, Chief Judge, contra) overruled the motion in arrest, and rendered judgment for the plaintiff, on the ground that it was the intention of the defendant to make a negotiable instrument.

---

## Case No. 9,904.

MUIRHEAD v. ALDRIDGE et al.

[14 N. B. R. 249; 2 N. Y. Wkly. Dig. 480; 33 Leg. Int. 213.] [1]

Circuit Court, D. New Jersey. March 28, 1876. [2]

HUSBAND AND WIFE—WIFE'S PROPERTY—ACCUMULATED BY HUSBAND—BANKRUPTCY.

Where the husband receives money from his wife, and engages in transactions in real estate, in her name, until he accumulates property of considerable value by his skill and energy, the property is liable to his assignee.

Appeal from the decree of the district court.

[This was a proceeding by William Muirhead, assignee in bankruptcy of Thomas Aldridge, against Thomas Aldridge and others to obtain a conveyance of certain property alleged to belong to the bankrupt.]

McKENNAN, Circuit Judge. The main purpose of the complainant's bill is to obtain a conveyance to him, as the assignee in bankruptcy of Thomas Aldridge, of certain real estate, described in the bill, the title to which is apparently in Mrs. Aldridge, but is claimed to be meritoriously in her husband. This real estate was acquired and conveyed to Mrs. Aldridge during her coverture, and so is alleged to be her separate property. By the laws of the state of New Jersey (see Dixon's Dig. 547), every married woman is invested with the capacity "to receive, by gift, grant, devise, or bequest. and to hold to her sole and separate use, as if she were a single female, real and personal property," independently of the control or disposal of her husband, and without liability for his debts. According to the obvious import of the statute, the courts

[1] [Reprinted from 14 N. B. R. 249, by permission. 2 N. Y. Wkly. Dig. 480, contains only a partial report.]
[2] [Reversed in 101 U. S. 397.]

of the state, in numerous decisions, have construed it to authorize the acquisition by a married woman of personal property and real estate, and to intercept the common-law right of her husband to reduce her personal property to possession, and to appropriate the rents, issues, and profits of her real estate as an incident of his initiate estate by the courtesy. And it has also been held that where a deed is made to a married woman she is, prima facie, to be taken as having paid the consideration stated in it out of her separate property, thus assimilating her as to this, to every other grantee, and placing her in a more advantageous position than is assigned to her by the courts of other states. in which similar laws exist. But as a mere presumption, the primary effect of which is to impose the burden of proof upon the party who gainsays it, it will not outweigh satisfactory evidence that her separate means were entirely insufficient, or even grossly inadequate, to pay the consideration of the conveyance. When, therefore, the title to real estate is conveyed to a married woman, she must be considered the bona fide owner of it, as if she were a single female. But it must be intrenched in the real good faith by which an honest acquisition is distinguished. If it is purchased by her or for her, no matter by whom. its validity cannot and ought not to be questioned. But if she has no separate estate, or that is disproportionately small, compared with the consideration ostensibly furnished by her, and her means are materially supplemented by her husband's contribution from resources, whether money or its equivalent, which he could not rightfully so apply, such a transaction does not specially invite, as it certainly does not deserve, any legal sanction.

These general principles seem to me to be the clear result of all the cases discussed on both sides in the argument, and the decision of the cause to depend, therefore, upon the solution of the question. whether the several parcels of real estate described in the bill were acquired by Mrs. Aldridge, by the appropriation of her own separate means to their purchase, or whether her husband ought to be regarded as their real owner. by reason of his having contributed the chief part of the consideration paid for them. It would involve unnecessary elaboration to discuss in detail the evidence in the record touching this inquiry. It is sufficient to say that. after a careful collation and consideration of it, I am convinced that the prayer of the bill ought to be allowed. During nine years, from 1861 to 1870, twenty-one pieces of real estate, of various kinds, were purchased for and conveyed to Mrs. Aldridge, for the aggregate consideration of about thirty-three thousand dollars. Of these properties, portions were sold and exchanged, and buildings were erected on some of them; and there remains, as the net result of these operations, property nearly equal to twenty thousand dollars in value, nominally belonging to her. Now. what was the extent of